May it please the court, Kara Hartzler, Federal Defenders for Victor Childs. This habeas petition challenges the district court's finding that petitioner Victor Childs may be extradited to Mexico to face charges involving the death of his wife Karen. The district court erred in dismissing the habeas petition for two primary reasons. First, the district court's order violated due process because if Mr. Childs was extradited, no remedy exists for the violation of his due process rights. Second, the government did not show probable cause of the element of intent. Go back to the first argument. I thought you framed it in terms of a violation of Miranda. Now, you just said it. There was no issue that the statement was voluntary, so there's no due process violation, right? Your Honor, it's, again, a very convoluted analysis, but we would actually acknowledge and concede that Miranda doesn't apply in the context of extradition proceedings. The Falsus case dooms you on that front, right? That was – in some ways, yes, Your Honor. Okay. Well, let me just – I want to make sure we're on the same page. Absolutely. Because I read your entire – what you framed as the first argument. I think in your brief it was the second argument, right? That's right. I read that argument as it framed entirely in terms of Miranda, and that's why I was caught off guard when you tried to shift it to a due process. Because I read Falsus as basically foreclosing any kind of a Miranda claim here. So what's your theory now as to why there was a due process violation? Our theory, Your Honor, is that essentially while it wasn't the Miranda violation itself that forms the basis for a constitutional violation, the violation that took place here was so fundamentally unfair in that he was – any – as the district court stated in the situation, any court in the nation would have suppressed those statements on Miranda grounds. But here's the question that I have. Let's assume that those statements are suppressed. It seems to me that there was plenty of evidence to support probable cause even without his statements, including his telling lies to various friends and neighbors about the whereabouts of his wife after she had died, that he tried to sell her wedding ring and the weapon that was apparently used to kill her that he was fleeing. All of that is completely apart from his statements. So what's the problem? Before you answer that, can I just make sure we're all on the same page? Because I understood you to have an argument regarding the so-called Miranda violation that was completely separate from the probable cause issue, right? That's correct. So I was trying to get a handle before you get into the probable cause, because I agree with Judge Graber that even without the statements it seems to me there is probable cause. I'm just trying to get a handle on what's this independent argument you have for invalidating the entire extradition. The independent argument, Your Honor, is that essentially what happened here is that you had government misconduct. You had a person who was brought in for interrogation. He asked for a lawyer. He was denied his right to have a lawyer. And not only that, but Mexican officials were brought in. He subsequently made a statement, and now the U.S. government is seeking to extradite him to a place where those statements, those non-Miranda statements will be used. As a result, that violates due process. It was government misconduct. Do you have a case? What's your strongest case to support your argument that in the extradition context, a due process violation of the nature you've described can negate the extradition? Your Honor, while there's no case law in this circuit necessarily on this issue, there are at least four other circuits who have found that constitutional issues such as this can be considered in the context of extradition. Well, but our circuit does not. Our circuit does not. I'm not aware of any case law in our circuit that addresses this specific issue. That allows the constitutional challenge to an extradition process. I mean, there are no cases in our circuit that say you can raise issues based on the United States Constitution in an extradition process. Your Honor, this was an issue that was discussed quite a bit in some concurrences in a recent en banc case called Trinidad y Garcia. But it wasn't necessarily specifically on point. Now, what I would put forth to the Court is that there's many, many situations where essentially the government is a creature of the Constitution. And any person, any law student who's studying for the bar knows that when you look at the hierarchy of law, you start off with the Constitution. After that, you go to federal statutes and international treaties. Now, how can we comply with an international treaty without first beginning with the constitutional questions? So while there's no case law on point in this circuit that I can directly point you to, we're basically relying on the underlying principle that everything that goes through this court system has to comply with the Constitution. Well, the difficulty with your argument is that puts us in the position of judging another country's judicial system. And that's something that we've categorically said that we will not do in the context of an extradition. There's certainly the rule of non-inquiry, which I believe you're referring to, which states that we cannot look at what other countries will do. But in this case, it's actually precisely the rule of non-inquiry that makes this analysis, this distinct analysis, so important. We're not arguing that Mexico may be wrong in using this statement. Because his counsel can litigate that in Mexico, right? That's correct. What we're arguing is that essentially there was government misconduct here that led to the statement that was made, and he has no remedy for that. But every due process claim of which I'm aware in this country requires some showing of prejudice. And if the existence or nonexistence of the statements is irrelevant to a finding of probable cause, I don't see how, even if we followed everything you've said so far, how there would be a due process violation for my earlier question, which I view as tied up with your due process argument. Because if there's no prejudice, then there's no valid due process claim. So certainly. Let's move to the issue of probable cause. Everything that Your Honor stated in terms of the fact that... First of all, do you agree with that, that due process claims to be successful require some showing of prejudice? I would agree with that, Your Honor. Okay. So now let's figure out if there was any. All right. Every factor that Your Honor described. You know, Mr. Childs telling people that his wife had gone somewhere else. All of those certainly indicate knowledge. They indicate perhaps that he was present at her death and knew of her death. Consciousness of guilt? Consciousness of guilt, Your Honor, I believe this would not actually go to that. So your spouse is dead, and you know it, and you're busy telling people that she's gone on vacation. You don't think that shows potentially a consciousness of guilt in her death? Your Honor, the case law that I'm aware of defines consciousness of guilt very narrowly to be situations where you are actually confronted with a person who is accusing you of committing a crime. And that didn't happen here. So in the strict sense... So let's call it circumstantial evidence. You can put another label on it. But when you're selling, you know, then you're trying to sell the wedding ring. Then you're trying to flee the country to get away with the murder weapon. Why isn't that very strong circumstantial evidence sufficient for probable cause? Our basic argument, Your Honor, is that because the statute requires an intent element, the government here was required to show some probable cause of intent. You can't just do a totality of the circumstances like you can do in other probable cause situations. Here, everything that you're just mentioning goes to knowledge. It goes to perhaps presence. But it doesn't necessarily go to the issue of whether he intentionally pulled the trigger. Well, two, I mean, people don't wind up with two bullets in their head by accident most times. So it seems to me that alone would allow an inference of intent. And that goes to the issue of a statement, his statement, you know, according to his... No, not his statement. Physical evidence. One person would, a person wouldn't put two bullets into their head themselves. That's almost physically impossible. Well, if you look at the government's evidence, their evidence actually doesn't show that the second bullet or that both bullets penetrated the skull. In fact, if you look at the excerpts that record, it shows that one bullet actually did penetrate the skull and the other did not. Therefore, it doesn't necessarily mean that both bullets killed her and therefore... It sounds to me like you're making a jury argument under a beyond a reasonable doubt standard. We're talking about probable cause here, which is far lower. And all it says is eventually a jury ought to look at this. It's not time yet for your jury argument. And I guess I have a difficult time seeing the absence of probable cause here and even the importance or relevance of the statements in the great scheme of things here. If it's all right with the court, I'll save the rest of my time for rebuttal. You may do that. Thank you. Good morning, Your Honors. I'm Jonathan Shapiro for the United States. I'll take the arguments in the order that they were presented. Let's start with the due process violation. Would we... Let's say that instead of this maybe call it what you want, a technical Miranda violation, she would say it was a more egregious violation of his right to have counsel present. But let's say that the United States agents actually had tortured the guy to get the statement, right, something that everybody would agree was a clear due process violation. Are you saying that we could not rely upon that as a ground to invalidate the extradition? I think the reason and the basis for their claim is that they have no remedy. And the reason why they don't have any remedy in this case is because there was no violation. I take Your Honors' hypothetical and note that that isn't this case. But would the treaty allow torture to effectuate the removal of a person to their country? What are the treaty provisions on that? I don't know that the treaty between Mexico and the United States speaks to that issue. I just don't know. But I can answer Your Honor's question with respect to the extradition proceeding. I think under those circumstances, because I agree with Your Honor, that is the type of conduct that would tend to shock the conscience, would support a conclusion that it violated somebody's due process rights, and that the remedy would be that it shouldn't be considered in the extradition proceeding. And under those circumstances and under that hypothetical, I think that would be inappropriate. Well, if you concede that, then where is the line in terms of when due process can be used to negate an extradition proceeding? So if you concede torture would cross the line, why wouldn't a violation of Miranda, which the district court said would result in suppression in this country, why wouldn't that cross the line? Your Honor, maybe I misspoke. I didn't concede that the torture leading to a confession would necessarily invalidate the extradition. I did think it might be appropriate under those circumstances for the extradition court not to consider those statements. I don't know that there's any basis to invalidate the extradition altogether, if there's other evidence to support probable cause. Even if we know, let's say we just know to a certainty that that statement, compelled by torture, is going to be used against the defendant in the country to which he's going to be extradited, you would say no problem, we just ship the guy back, and the foreign government gets the benefit of our agent's acts of torture? I don't know why the foreign government under these circumstances should be penalized for what U.S. officials did, so I do think, yes, that's, I think, correct. I thought there were some constitutional limits on, or at least some authority of a United States court, to refuse to extradite somebody when we know that the egregiously unconstitutional conduct of United States agents is going to basically ensure their conviction in the country to which they're going to be sent. I think the authority exists. I don't know that it resides with the court, the extradition court, the habeas court, or this court. I do think that under those circumstances we have no reason to believe that the Secretary of State would agree, the final decision to extradite, it's a political decision, resides with the Secretary of State, and we have no reason to believe that the Secretary of State wouldn't take these facts into consideration in deciding whether to extradite, refusing to extradite, or extraditing based on conditions that the state may not be used. But I don't know of any case showing that the court would have the basis, based on any due process type argument, to deny or invalidate extradition based on your Honor's hypothetical. But it is a hypothetical, and I do think it's important, if I may come back to our facts, which is there was no constitutional violation because there's Supreme Court authority, Ninth Circuit authority, that merely violating Miranda does not amount to a constitutional violation. And in this case, the magistrate judge found that notwithstanding the manner in which Miranda was given, the statement was voluntary. It was not a coerced statement. The judge carefully reviewed the hour-long audio recording, and I believe it's in the record on appeal as well, and your Honors can listen to it. But based on the magistrate judge's listening of that interview, concluded that it was a very voluntary statement, not subject to coercion. So we're not in that shocking to conscience category of due process. Where we are is, yes, all the magistrate judge said is if this was a United States domestic prosecution and the government proposed to use that statement in a criminal proceeding here, then he believes it would be subject to suppression. But there's no disagreement in this case that extradition is not a criminal proceeding. The Fifth Amendment right against self-incrimination doesn't apply in this context, and it was properly considered by the magistrate. But as your Honor pointed out, the magistrate also made an alternate finding, which is that there's probable cause even without that statement. And the judge that considered the habeas petition in this case made the same alternate finding. So there's no harm in the statement here. Now, with respect to what may or may not be used in this statement in Mexico, it is a premise, a leading premise of their argument that it is going to be used, much like your Honor's hypothetical, that it's going to be used in Mexico. Well, we don't know what use, if any, Mexico is going to make of the statement. And the rule of non-inquiry says we shouldn't look and analyze what that's going to be. The Supreme Court ---- I think there are there not cases also that say that we don't demand that other countries' process be just like ours in order to extradite. Yes, your Honor. Going back to Neely v. Hankel at the turn of the last century, and that was asserted again by the unanimous Supreme Court in Munaf v. Jarin. And so, yes, they don't ---- we don't know. We shouldn't inquire. The Supreme Court has held that whether or not those countries afford the same constitutional rights isn't our concern. But I'd also note, interestingly, that the Mexican magistrate judge that issued the arrest warrant in this case, which is the charging document in this case, the Mexican charging document, did not consider the statement. So we don't know what use, if any, they're going to ---- But based on that, you might conclude that it doesn't have much prosecutorial value to the Mexicans. In any event, we don't know and we shouldn't look ---- we shouldn't inquire into it. And I guess I haven't even mentioned Balseas, but it doesn't matter. There's no self-incrimination right for its use, even if the Mexicans did use it. Mr. Childs has no Fifth Amendment self-incrimination right against its eventual use in Mexico. Turning to probable cause, there is ample probable cause in this case. All that this Court ---- the standard of review for this Court is whether there is any evidence supporting the magistrate's conclusion. That's the standard that this Court has adopted in previous cases. It's the standard that Mr. Childs expressly relied on before the magistrate and before the habeas judge. I thought we reviewed factual questions for clear error in a habeas petition challenging an extradition order. The factual ---- this is the probable cause determination. Okay. Which is not factual. That's your ---- That's the ---- and there's no question. It's the standard in Voe v. Benoff. It's the standard that was mentioned in the Trinidad v. Garcia case. And, again, it's the standard that they relied on below. And it's the standard that the habeas court ---- the habeas judge employed. And we're here, for your honors, to review that order. They asked that the habeas court employ the any evidence standard. And there is any evidence in this case. There's the evidence that the defendant owned a revolver around the time that his wife was killed, but with a gun. There's evidence that their marriage was characterized by argument, violence around this time. A neighbor overheard arguments. Two separate witnesses saw that his face was scratched and beaten around this time. Around this time that she was dead, based on the forensic analysis in their bed that they shared together, he was telling at least two other neighbors that she had gone to the United States to visit her parents. He had lied about it. He tried to get rid of the murder weapon. He tried to sell it. And when he fled to the United States, when he locked the door behind him in Mexico, he had the weapon on him when he was arrested that was used to put two bullets in Karen Child's head. I think that that's more than any evidence to support probable cause, to support the charge that Mexico should get the accused back for trial in this case. And unless Your Honors have any specific questions or general questions or hypothetical questions, I think I... No form of questions left for you. I think that what they're asking for is an extraordinary remedy, though. Even in the United States, assuming that there was some type of violation, nobody would tell United States authorities that you may not prosecute an individual. There might be limits. There might be conditions. But that's what they're asking for here, that Mexico simply not get Mr. Child's back. I don't think that's an appropriate result in this case. Thank you, counsel. You have some rebuttal time remaining? Just very briefly, I'd like to point this court to the fact that this occurred in San Diego. Now, the relevance of that is this. If you have a lot of back and forth across the border, and you have the ability as a law enforcement officer to try to get information out of someone by just saying, hey, let me call some officers from across the border, and I'll just have them interrogate them, you're essentially circumventing the Constitution. And what is going on here is exactly that. So there needs to be some sort of limits from allowing law enforcement to undertake that kind of activity. Otherwise, what you're doing is essentially creating a black hole. Now, in Balsas, the Supreme Court referred to certain situations where there are egregious circumstances where there might be an exception, and we would submit that this case falls into that exception. Thank you. Thank you, counsel. The case just argued is submitted, and we appreciate, again, the arguments that have been made to us.
judges: Graber, Rawlinson, Watford